IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DEBORAH ROBIN, individually and on behalf of others similarly situated,<br><br>    Plaintiff-Petitioner,<br><br>    v.<br><br>STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., an Illinois Corporation,<br><br>    Defendant-Respondent. | CIVIL ACTION NO.: 24-391<br><br>CLASS ACTION JURY<br><br>DEMAND |

## CLASS ACTION COMPLAINT

The Petitioner Deborah Robin, an individual of the full age of majority and resident of the Parish within this Judicial District, State of Louisiana, individually, and on behalf of all other persons similarly situated, hereinafter referred to as "Plaintiff" or "Putative Class Representative," brings this suit as a class actual pursuant to Fed. R. Civ. P. 23(a) and (b)(3), against Defendant, State Farm Mutual Automobile Insurance Company ("Defendant" or "State Farm"), respectfully representing as follows:

1.    The Defendant in this cause of action is State Farm Mutual Automobile Insurance Company, an Illinois insurance company licensed to and conducting business in Louisiana which has its principal place of business at 2775 Sanders Road Northbrook, IL 60062, and who may be served pursuant to Louisiana CCP 1261, et al, by service upon the Louisiana Secretary of State at 8585 Archives Ave. Baton Rouge, LA 70809.

2.    The Defendant is liable to Plaintiff and the Putative Class Representatives, and all others similarly situated for all elements of damages allowed by Louisiana law, whether past, present, and/or future damages, in an amount that is just and reasonable in the premises.

1

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because (a) the Plaintiff is a member of the putative class defined herein, which consists of at least 100 members, and she and Defendant are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the 28 U.S.C. § 1332 exceptions apply to this claim.

## VENUE

4.  Plaintiff alleges that venue in this Honorable Court is proper pursuant to 28 U.S.C. 1391(a), because a substantial portion of the acts and course of conduct giving rise to the claims alleged occurred within the district and the Defendant is subject to personal jurisdiction in this district.

## NATURE OF THE CASE

5.  This is a Louisiana class action lawsuit by Plaintiff, individually, and on behalf of a putative class of persons (the "Class"), who were insureds under a State Farm automobile policy issued for private passenger auto physical damage, pursuant to which Defendant was required to pay the cost to repair or replace an insured vehicle up to the "Actual Cash Value" ("ACV") of the vehicle.

6.  Defendant State Farm is one of the largest passenger auto insurance carriers operating in the State of Louisiana. One of the coverages State Farm sells to consumers is comprehensive and collision coverage. State Farm systematically and uniformly underpaid Plaintiff and thousands of other putative Class Members amounts owed to its insureds who suffered the total loss of a vehicle insured with comprehensive and collision coverage.

7.  Insureds, such as Plaintiff and the putative Class Members, pay a premium in exchange for State Farm's promise to repair any damage to an insured vehicle caused by a covered peril. However, State Farm's obligation to repair damage is not limitless; rather, it is limited (or capped) to the ACV of the insured vehicle – for example, State Farm is not obligated to spend $20,000 to repair extensive damage to a vehicle that is only worth $5,000. Under such circumstances, where the cost to repair damage exceeds the value of the vehicle (less retained value), the vehicle is considered a "total loss." If a "total loss" occurs, State Farm's contractual obligation is limited to paying the ACV of the total-loss vehicle.

8.  ACV is defined by Louisiana law as the *cost to buy another vehicle*. A settlement for the "actual cash value" of a car must be "based on the actual cost to purchase a comparable motor vehicle." LA. Rev. Stat. Ann. § 22:1892(B)(5). *See also: Jouve v. State Farm Fire & Cas. Co.*, 74 So. 3d 220, 229 (La. Ct. App. 2011) ("Under Louisiana law, actual cash value is equal to replacement cost value less depreciation."); *Cummings v. Allstate Prop. & Cas. Ins. Co.*, 675 F. Supp. 3d 660, 678 ("The Court interprets the language of La. R.S. § 22:1892(B)(5) as supporting Plaintiff's argument that actual cash value includes all reasonably necessary costs associated with obtaining a replacement vehicle[.]"); *Buddington v. United Servs. Auto. Ass'n*, 2023 U.S. Dist. LEXIS 56044, *12 ("[T]he Court is satisfied that Plaintiffs have asserted viable breach of contract claims."); *Wright v. GEICO Cas. Co.*, 2021 U.S. Dist. LEXIS 184553, *12 ("The generally accepted meaning of the term "replacement cost" may include all costs associated with replacement, which includes Regulatory Fees, as Plaintiff argues.")

9.  To replace a car in Louisiana, an insured is required to pay sales tax and other mandatory fees such as title, registration, and tag fees ("Purchasing Fees") required to properly

3

obtain ownership of and to operate a motor vehicle. These Purchasing Fees are included in the actual cost to buy another vehicle. LA. Rev. Stat. Ann. § 22:1892(B)(5).

10. Throughout the class period, Louisiana prohibited the purchase, transfer, or lease of a vehicle without the transfer of title, and the payment of a minimum $8.00 title transfer handling fee. La. R.S. § 32:412.1 (A)(3)(b):

> A. Except as provided for in Subsection E of this Section, the office of motor vehicles shall collect, in addition to any fee authorized by law, a handling charge of eight dollars for each of the following transactions:
> …
> (3) Vehicle titling and registration:
> …
> (b) Transfer of ownership.

11. Throughout the class period, Louisiana prohibited the purchase, transfer, or lease of a private passenger vehicle without proper registration, and the payment of a minimum $3.00 license plate transfer fee. La. R.S. § 47:509 (B)(3) ("To affect such transfer and registration the owner of the vehicle shall pay a total registration transfer fee of three dollars. Such fee shall cover only the transfer of said registration.").

12. Throughout the class period, Louisiana does not recognize the transfer of ownership of a motor vehicle without payment of the $68.50 title fee, La. R.S. § 32:728 (a vehicle will not be legally transferred until the new owner makes a proper application for title).

13. "Purchasing Fees" are part of the actual cost to purchase a comparable motor vehicle and are made up of fees to title, tag, and register a vehicle.

14. Registration and plate fees are mandatory costs to purchase a comparable automobile because a tag transfer and new registration must be obtained for the replacement vehicle. L. R.S. § 47:509.

15. Mandatory registration and licensing fees shall be paid to the commissioner, for the

4

registration and licensing by the State of Louisiana of all vehicles and motor vehicles. L. R.S. § 47:461.

  16.  Registration and tag fees include:

   i. Private passenger vehicle license plate transfer fee: $3.00. L. R.S. § 47:509(3);

   ii. Annual License fee for private passenger vehicles: $20.00 minimum fee with an additional $2.00 for every additional $1,000 in the selling price of the vehicle. Transfer License L.R.S. § 47:463[1].

   iii. Private passenger truck license plate transfer fee: $3.00 L. R.S. 47:461;(2)

   iv. Annual License fee: private passenger trucks:

    1. Weight of 6,000 or less  $ 10.00

    2. 6,001 to 10,000  $ 28.00

   L. R. S. § 47:462.

   v. Public license tag agents/retail motor vehicle charges: $23.00. Said fees are in addition to the registration license tax or other authorized fees, sales taxes, and transactions. The convenience charge shall not exceed twenty-three dollars per authorized transaction. However, the public license tag agents shall collect and retain the full amount of the convenience charge." L. R. S. § 47:532.1.

---

[1] The cost to buy a replacement vehicle requires payment of two years of registration fees: "(1) For each passenger-carrying automobile, operated only for private use, an annual registration license shall be collected each two years in advance in amounts fixed by the following schedule:
(a) For an automobile having an actual value of ten thousand dollars or less, the annual license tax shall be ten dollars.
(b) For an automobile having an actual value of greater than ten thousand dollars, the annual license tax shall be the base tax of ten dollars plus an additional tax of one dollar per each one thousand dollars of actual value above ten thousand dollars. L. R. S. § 47:463(Emphasis added).

17. A vehicle will not be legally transferred until the new owner makes a proper application for title and pays the concomitant fees. L. R.S. § 32:706. Marketable title.

18. Title fees include:

   i. Title fee of $68.50 La. R.S. § 32:728;

   ii. Title transfer handling fee of $8.00, La. R.S. § 32:412.1;

   iii. Title Lien Fee: $10.00 La. R.S. § 32:728;

   iv. Title Notary Fee, certificate of title assigned before a notary by seller to purchaser: $15.00;

   v. Bill of Sale/Lease Notary Fee, original notarized bill of sale or invoice specifying the actual consideration involved and full description of vehicle.: $15.00.

19. State Farm refuses to pay the full ACV replacement cost including but not limited to any amount for, in some cases, sales tax on the vehicle value or some or all title transfer fees or some or all plate transfer fees and registration fees, despite its obligation to pay the reasonably necessary costs to buy another vehicle.

20. This lawsuit is brought on behalf of Plaintiff and on behalf of all other similarly situated insureds who have suffered damages due to Defendant's practice of refusing to pay reasonably necessary ACV in total loss claims under comprehensive and collision coverages.

21. The Plaintiff and class member vehicles were private passenger automobiles intended for use on the roads and highways of Louisiana and their Actual Cash Value includes the necessary costs to make those vehicles legal to be driven on the roads and highways. Merriam-Webster's general definition of actual cash value is "money equal to the cost of replacing lost,

6

stolen, or damaged property after depreciation[.]"[2] Merriam-Webster sets forth two legal definitions of actual cash value; one is virtually identical to the general definition—"the cost of replacing or repairing damaged property less any applicable depreciation"—whereas the other defines actual cash value as "FAIR MARKET VALUE[.]"[3] Similar to the legal definitions provided by Merriam-Webster, Black's Law Dictionary provides the following on actual cash value: "1. Replacement cost minus normal depreciation[,]" and "2. See *fair market value*." *Value*, BLACK'S LAW DICTIONARY (11th ed. 2019). All of these definitions are reasonably read to include the costs of Purchasing Fees imposed when replacing a total-loss vehicle. A substitute asset would not have the actual cash value of the original item if it could not be used in the same way, *e.g.*, registered and able to be legally driven. Therefore, Purchasing Fees are part of a total loss vehicle's Actual Cash Value.

## STATEMENT OF FACTS

22. State Farm's Policy covered Plaintiff and Class Members based on standardized policy language with identical material terms for collision and comprehensive coverage on first-party total loss physical damage claims. *See* Exhibit A ("Policy').

23. The Policy required State Farm to pay Actual Cash Value[4] for the total loss, which includes "any applicable state taxes and/or fees."[5] Such reasonably necessary replacement costs include sales tax, title fees (including transfer handling fees), notary fees and registration and

---

[2] Actual Cash Value, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/actual%20cash%20value (last visited May 08, 2024).
[3] *Id.* Merriam-Webster defines "fair market value" as "a price at which buyers and sellers both having reasonable knowledge of the property and being under no compulsion are willing to do business." *Fair Market Value*, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/fair%20market%20value#legalDictionary (last visited May 08, 2024).
[4] https://www.statefarm.com/claims/auto/total-loss#ACV ("We base your vehicle's value on its year, make, model, mileage, overall condition, and major options – minus your deductible and applicable state taxes and fees.")
[5] What Happens if Your Car Is Totaled? - State Farm® ("You'll receive the determined actual cash value of the vehicle, minus the deductible you chose when insuring it, as well as any applicable state taxes and/or fees.")

7

license plate transfer fees (hereinafter referred to collectively as, "Purchasing Fees") on all total loss claims.

24. The Policy promises to pay for "loss" to a covered auto. Loss is defined as "direct, sudden, and accidental damage to . . . a *covered vehicle*." *Id.* at 23 (original emphasis preserved).

25. Relating to physical damage collision coverage, the Policy specifically provides "[w]e will pay for loss caused by collision to a covered vehicle." *Id.* at 24.

26. The Policy explains:

*We* have the right to choose to settle with you or the owner of the covered vehicle in one of the following ways:

> a. Pay the cost to repair the covered vehicle minus any applicable deductible.
>
> …
>
> b. Pay the actual cash value of the covered vehicle minus any applicable deductible."

*Id.* at 26-27 (original emphasis).

27. The Policy's limits of liability are therefore the Actual Cash Value of the vehicle at the time of loss or the cost to repair the vehicle to its pre-loss condition (less the deductible).

28. Taken together, these Policy provisions obligate Defendant to pay for "loss" (i.e., damage to the auto) by either paying for the "loss" (i.e., damage) or by repairing or replacing the vehicle. However, if the cost of paying for the loss (i.e. damage) or the cost of repairing or replacing the vehicle *exceeds* the value of the vehicle, Defendant is entitled under the limitation of liability to elect to pay the "actual cash value" of the vehicle.

29. State Farm violated the Policy provisions requiring that it pay "loss" on comprehensive and collision claims. "Loss" expressly includes a total loss and obligates Defendant to pay actual cash value pursuant to the policy's Limits and Loss Settlement provision.

30. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is replaced after the total loss. The Policy contains no provision setting out a difference in coverage based on whether a total loss vehicle is leased, owned, or financed. The Policy imposes no condition that an insured replace a total-loss vehicle to receive full coverage under the Policy.

31. The Policy does not exclude from coverage the reasonably necessary sales tax or Purchasing Fees.

32. The Policy expressly incorporates the mandates of Louisiana insurance law and regulations. The Policy states, pertinent part:

> The coverage provided by this policy is done so in accordance with Louisiana insurance law. If any provisions of this policy are in conflict with Louisiana statutes, the policy is amended to conform to the minimum requirements of the statutes.

*Id.* at 42.

33. Therefore, incorporated into the policy is Louisiana law requiring that a settlement for the "actual cash value" of a car must be "based on the actual cost to purchase a comparable motor vehicle." LA. Rev. Stat. Ann. § 22:1892(B)(5).

34. Through its website, State Farm represents a "total loss" is when "the cost of repairs exceeds the vehicle's ACV." statefarm.com; *Total Loss Claims: Is my vehicle a total loss?* https://www.statefarm.com/claims/auto/total-loss (last visited on April 30, 2024). A total loss may also occur when the vehicle can't be repaired safely or the state regulations for damage severity require a total loss declaration. *Id.*

35. State Farm further represents on its website that, if a car is "totaled," State Farm will pay its insured "the determined actual cash value of the vehicle, minus the deductible you chose when insuring it, *as well as any applicable state taxes and/or fees*." *See* statefarm.com; *WHAT HAPPENS IF YOUR CAR IS TOTALED?* [What Happens if Your Car Is Totaled? - State Farm®](#) (last visited on April 29, 2024) (emphasis supplied).

36. State Farm, as a general business practice, elects to pay "actual cash value" every time it determines a vehicle to have sustained a "total loss."

37. State Farm represents through its website, that "actual cash value" includes applicable taxes and fees. *Id.*

38. The Policy and Louisiana Law require State Farm to pay sales tax and reasonably necessary Purchasing Fees on total loss claims.

39. ACV replacement costs include all reasonably necessary Purchasing Fees incident to transfer of ownership and new registration and State Farm was required to pay them under the Policy and Louisiana law.

40. Throughout the class period, Louisiana levied a sales and use tax on the sale or lease of any automobile sold or leased throughout the State of Louisiana. La. R.S. §§ 47:301-37:318.

**A. State Farm Breached Its Policy with Plaintiff by Failing to Pay Reasonably Necessary Replacement Costs on Her Total Loss Claim.**

41. Plaintiff entered a Louisiana automobile policy agreement to be insured by State Farm under terms contained in the "form" policy.

42. The Policy provided physical damage coverage for Plaintiff's 2011 Honda CR-Z Hybrid, VIN JHMZF1D63BS002972 (the "Insured Vehicle").

43.     Plaintiff's Vehicle was titled and registered in accordance with Louisiana law. Plaintiff paid sales tax and Purchasing Fees for the total loss vehicle prior to the loss.

44.     On or about November 20, 2022, Plaintiff was involved in an auto collision while operating the Insured Vehicle. Plaintiff submitted a claim to State Farm for the Insured Vehicle physical damage caused by the collision, claim number 18-43M4-52G.

45.     Because State Farm determined that the cost to repair exceeded the cost to replace the vehicle, State Farm declared that the Insured Vehicle was a "total loss" and State Farm, not the insured, elected pursuant to the Policy to pay the ACV of the vehicle instead of the higher cost to repair the vehicle.

46.     State Farm determined the Insured Vehicle had an actual cash value of $4,799.00. *See* Exhibit B at 1 (Total Loss Settlement).

47.     State Farm subtracted the deductible of $500.00, added $489.50 for state sales tax, and added $76.50 for tag and title fees. State Farm determined the final net payment to be $4,865.00. *Id.*

48.     State Farm actually only paid the mandatory minimum title transfer handling fee owed on Plaintiff's claim of $8.00; LA. R.S. 32:412.1 and the mandatory minimum title fee of $68.50. La. R.S. § 32:728.

49.     Plaintiff replaced her total-loss vehicle with a replacement vehicle. The cost to replace her vehicle included all reasonably necessary replacement costs, including all Purchasing Fees such as all sales tax, title, registration, and transfer fees.

50.     Both the Policy and the applicable Louisiana law require, in any cash settlement, payment of all Purchasing Fees, regardless of whether the insured vehicle was leased or owned, whether it was replaced, or whether salvage was retained.

51. State Farm breached its Policy by failing to pay all reasonably necessary replacement costs to Plaintiff, including Purchasing Fees related to the registration, tag fees and fees incidental to the transfer of ownership.

52. Plaintiff and all Class Members similarly situated with first-party total loss claims were damaged by State Farm's breach of the Policy by its failure to pay all of the reasonably necessary replacement costs on their total loss claims.

53. Each Class Member was insured by State Farm for total losses under the same material terms as the Policy insuring Plaintiff.

54. Like the Plaintiff, each Class Member submitted a claim to State Farm during the class period, which State Farm determined was a covered total loss.

55. State Farm breached its insurance policy with each Class Member by failing to pay all reasonably necessary replacement costs on the Class Member's total loss claim.

56. Plaintiff and all Class Members satisfied all terms of the Policy and all conditions precedent, such that the insurance policy was in effect and operational at the time of the accident, and the total loss claim was deemed covered claims by State Farm.

57. Plaintiff and Class Members are entitled to expenses of litigation, including all attorneys' fees and costs pursuant to La. R.S. § 22:1892(B)(1) and La. R.S. § 22:1973.

58. State Farm has acted in bad faith and State Farm's failure to pay full ACV replacement costs was arbitrary, capricious, or without probable cause. State Farm has caused Plaintiff and Class Members unnecessary trouble and expense by State Farm's failure to comply with the clear requirements of the Policy and Louisiana law.

59. There is no legal justification for State Farm's conduct in failing to pay full ACV replacement costs on Louisiana first-party total loss claims.

## **CLASS ACTION ALLEGATIONS**

60. Plaintiff brings this lawsuit as a class action seeking representation of the Class pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), (b)(3) and/or (c)(4), as may be deemed appropriate by the Court.

61. Plaintiff asserts claims for breach of contract on behalf of the Class defined as follows:

> All State Farm insureds, from the earliest allowable time through the date the class is certified, who were or are Louisiana residents who received a first-party payment on an automobile total-loss claim that did not include sales tax, title fees, registration fees, and/or tag fees as part of the cash payment.

Plaintiff reserves the right to amend this class definition as additional facts are discovered and become known.

62. Excluded from the Class are all officers and employees of State Farm and its affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

63. **Numerosity.** The Class is so numerous that joinder of all individual claims at issue is impracticable. It is believed that there are thousands of Louisiana residents whose claims resulted in a total loss payment from State Farm that did not include title transfer handling fees and/or license plate transfer fees during the class period. Thus, numerosity is established within the meaning of Rule 23(a)(1).

64. **Commonality.** There are common issues of law and fact as to:

   a. Whether the Policy requires State Farm to pay full ACV replacement costs, including sales tax and Purchasing Fees on first-party total loss claims; and

  c. Whether State Farm breached the Policy by failing to pay full ACV replacement costs, including sales tax, title transfer handling fees and/or license plate transfer fees.

Thus, commonality is established within the meaning of Rule 23(a)(2).

65. **Typicality.** Plaintiff's claims and defenses are typical of the claims of all Class Members. State Farm injured Plaintiff and Class Members through uniform misconduct and Plaintiff's legal claims arise from the same core practice— State Farm's failure to pay full ACV, including all reasonably likely Purchasing Fees and sales tax on first-party total loss claims under Louisiana physical damage policies. Plaintiff suffered the same harm as all Class Members: damages for unpaid replacement costs required under the Policy. Plaintiff's interests are identical to those of the other Class Members, within the meaning of Rule 23(a)(3).

66. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class because:

 a) Plaintiff has retained counsel experienced in litigating consumer class actions and complex litigation, and counsel will adequately represent the interests of the Class;

 b) Plaintiff and her counsel are aware of no conflicts of interest between Plaintiff and absent Class Members or otherwise;

 c) Plaintiff and her counsel have adequate financial resources to assure that the interests of the Class will not be harmed; and

 d) Plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel in the prosecution of this litigation and protection of the putative Class Members' interests in this regard.

Thus, adequacy is established within the meaning of Rule 23(a)(4).

67. A class action provides a fair and efficient method for adjudicating this controversy and is superior to the other available methods of adjudication in that:

   a) Neither the size of the Class, nor any other factor, make it likely that difficulties will be encountered in the management of this Class as a class action;

   b) The prosecution of separate actions by individual Class Members, or the individual joinders of all Class Members in this action, is impracticable and would create a massive and unnecessary burden on the resources of the courts and could result in inconsistent adjudication, while a single class action can determine, with judicial economy, the rights of each member of the Class;

   c) Because of the disparity of resources available to Defendant versus those available to individual Class Members, prosecution of separate actions would work a financial hardship on many Class Members;

   d) The conduct of this action as a class action conserves the resources of the parties and the court system and protects the rights of each Class Member and meets all due process requirements as to fairness to all parties. A class action is also superior to the maintenance of these claims on a claim-by-claim basis when all actions arise out of the same circumstances and course of conduct; and

   e) Because the claims may be small or nominal in nature, individual actions will be rendered financially impractical if not impossible.

## COUNT I: BREACH OF CONTRACT

68. The allegations in the preceding paragraphs are hereby incorporated by reference.

69. Plaintiff and all Class Members were covered insureds under their Policies with State Farm and complied with all Policy terms relating to their total loss claims.

70. Each Policy and Class Member made a claim under their Policy that State Farm determined to be a first-party total loss covered claim.

71. The Policy required that State Farm pay Plaintiff and all Class Members for the "loss" to their insured vehicles.

72. However, if the value of the "loss" exceeds the value of the damage, referred to as a "total loss," State Farm is entitled, under the limitation of liability provision, to elect to pay the "actual cash value" of the vehicle.

73. If State Farm does not pay the full value of the "loss," and State Farm instead elects to pay ACV, it is obligated to pay the full amount of ACV.

74. State Farm determined that Plaintiff's and all Class Members' vehicles experienced a total loss.

75. State Farm elected to pay Plaintiff and Class Members ACV instead of paying the higher cost of loss to repair or replace.

76. By electing to pay ACV, State Farm was required under its Policy, to pay reasonably necessary expenses incurred in the cost to buy another vehicle, which were reasonably likely to be incurred on the replacement of their total loss vehicles. Such costs include sales tax and Purchasing Fees on total losses because such taxes and fees are reasonably necessary costs to replace the totaled vehicle.

77. Alternatively, if State Farm's policy does not require it to pay for ACV, then under the Loss provision, State Farm owes the higher cost of repair of the vehicle regardless of ACV.

16

78. State Farm failed to pay Plaintiff and all Class Members full ACV replacement costs, including all sales tax and Purchasing Fees owed under the Policy on their first-party total loss claims.

79. State Farm's failure to pay Plaintiff and Class Members' full ACV replacement costs included in the cost to buy another vehicle including sales tax, and Purchasing Fees constitutes a breach of State Farm's Policies.

80. As a result of State Farm's breaches, Plaintiff and Class Members have suffered damages and are entitled, under their Policies, to sums representing all ACV replacement costs, including but not limited to unpaid sales tax on the value of the total loss vehicle at the time of loss, unpaid title transfer fees, new registration and license plate transfer fees, as well as prejudgment and post judgment interest, attorneys' fees, and all costs and expenses of litigation.

81. Plaintiff and the Class Members are entitled to an award of attorneys' fees and costs under Louisiana law and all contractual and statutory provisions allowing for recovery of attorneys' fees.

## COUNT II: EXPENSES OF LITIGATION
### (La. R.S. § 22:1892 and La. R.S. § 22:1973)

82. The allegations in the preceding paragraphs are hereby incorporated by reference.

83. La. R.S. § 1892 requires an insurer to pay its insureds the amount of a claim due within thirty days after receipt of proof of loss.

84. La. R.S. 22:1973(A) requires an insurer to act with good faith and fair dealing, to adjust claims fairly and promptly, and to make a reasonable effort to settle claims with the insured.

85. State Farm violated La. R.S. § 1892 and § 1973 by failing to pay Plaintiff and all Class Members full ACV after determining that the vehicles sustained total losses.

86. At the time State Farm declared the vehicles total losses, State Farm knew that its Policies obligated it to pay full replacement costs of the vehicles, less depreciation.

87. State Farm advertised on its website that it pays the ACV cost to replace the vehicle based on the cost of comparable vehicles in the insured's geographic area. [What Happens if Your Car Is Totaled? - State Farm®](#) (last visited on April 29, 2024).

88. Despite its advertised promise to pay ACV, Defendant failed to pay Plaintiff and Class Members the full amount owed within thirty days of receipt of proof of the loss.

89. State Farm has acted in bad faith, been stubbornly litigious, and caused Plaintiff and Class Members unnecessary trouble and expense by failing to comply with the clear requirements of the Policies and Louisiana law.

90. There is no legal justification for State Farm's conduct in failing to pay full ACV replacement costs, including title transfer handling fees and license plate transfer fees, on Louisiana first-party total loss claims.

91. Plaintiff and Class Members are entitled to, and expressly pray for, expenses of litigation, including all attorneys' fees and costs pursuant to La. R.S. § 22:1892(B)(1) and La. R.S. § 22:1973.

## JURY DEMAND

Plaintiff, individually and on behalf of the putative Class, respectfully requests a trial by jury on all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of the Class including all other persons similarly situated, prays that State Farm Mutual Automobile Insurance Company be duly cited and served with this Petition, be required to appear and answer the same, and after due

proceedings had, that there by judgment rendered herein in favor of Plaintiff and the Class, and against Defendant as follows:

a) For an order certifying this action as a class action on behalf of the Class, with Plaintiff serving as representative of the Class and with the undersigned serving as Counsel for the Class;

b) For notice to be sent to the Class in a form and manner approved by the Court and comporting with due process;

c) For an award of compensatory damages in amounts owed pursuant to the policies of insurance and Louisiana law;

d) For all penalties, expenses, and relief allowable by law;

e) For all other damages according to proof;

f) For an award of attorneys' fees and expenses pursuant to La. R.S. §22:1892(B)(1) and/or La. R.S. §22:1973 or other applicable law;

g) For costs of suit incurred herein;

h) For pre-judgment and post-judgment interests on any amounts awarded; and

i) For such other general and/or equitable relief to which the Plaintiff and/or the Class may be entitled that this Court deems just and proper.

Dated: May 17, 2024                Respectfully submitted,

*/S/Soren E. Gisleson*
**Soren E. Gisleson**, La. Bar No. 26302
**HERMAN HERMAN & KATZ, LLC**
909 Poydras Street, Suite 1860
New Orleans, La 70113
Telephone: (504) 581-4892
Fax No. (504) 561-6024
E-Mail: sgisleson@hhklawfirm.com

**EDMUND A. NORMAND** *(pro hac vice pending)*
Florida Bar No.: 865590
**CHRISTOPHER M. HUDON** *(pro hac vice pending)*
Florida Bar No.: 123845
**NORMAND PLLC**
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407-603-6031
E-Mail: amy.judkins@normandpllc.com
E-Mail: ed@normandpllc.com
E-Mail: ean@normandpllc.com

*Attorneys for Plaintiff & Proposed Class*